**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

FARMERS COOPERATIVE
COMPANY,

Plaintiff,

vs.

SWIFT PORK COMPANY and
LOL FINANCE COMPANY,

Defendants.

No. C 07-3056-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING THE
PARTIES' MOTIONS FOR
SUMMARY JUDGMENT**

———————————

## TABLE OF CONTENTS

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . 6

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   *A. Standards For Summary Judgment* . . . . . . . . . . . . . . . . . . . 9
   *B. Timeliness Of FCC's Claims* . . . . . . . . . . . . . . . . . . . . . . 14
      *1. Arguments of the parties* . . . . . . . . . . . . . . . . . . . 14
         *a. LOLFC's argument* . . . . . . . . . . . . . . . . . . . . 14
         *b. Swift's argument* . . . . . . . . . . . . . . . . . . . . . 16
         *c. FCC's argument* . . . . . . . . . . . . . . . . . . . . . 16
         *d. The defendants' replies* . . . . . . . . . . . . . . . . . 18
      *2. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
         *a. A question of first impression* . . . . . . . . . . . . . . 18
         *b. Iowa rules of statutory interpretation* . . . . . . . . . . 19
         *c. Interpretation of the statutes in question* . . . . . . . . 21
   *C. Equitable Estoppel Against LOLFC* . . . . . . . . . . . . . . . . . . 26
      *1. Arguments of the parties* . . . . . . . . . . . . . . . . . . . 27
         *a. FCC's argument* . . . . . . . . . . . . . . . . . . . . . 27

   *b.*  ***LOLFC's reply*** . . . . . . . . . . . . . . . . . . . . . . . . . . 28
  *2.*  ***Analysis*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
   *a.*  ***Elements of equitable estoppel*** . . . . . . . . . . . . . . . 29
   *b.*  ***Analysis of the record*** . . . . . . . . . . . . . . . . . . . . . . 31

***III. CONCLUSION*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

One question common to all of the parties' motions for summary judgment in this case, and potentially dispositive of the plaintiff's claims that the defendants disregarded its agricultural supply dealer's lien pursuant to Iowa Code Ch. 570A, is whether the applicable statute of limitations for the plaintiff's claims is Iowa Code § 614.1(4) (five years) or Iowa Code § 614.1(10) (two years). That question, in turn, depends upon whether an agricultural supply dealer's lien pursuant to Iowa Code Ch. 570A is a "secured interest in farm products" within the meaning of Iowa Code § 614.1(10). The parties have identified, and the court has found, no decisions of Iowa courts addressing these questions, but the parties declined the court's invitation to certify these questions to the Iowa Supreme Court pursuant to N.D. Ia. L.R. 83 and Iowa Code § 684A.1. Therefore, the court turns to consideration of these questions, and such others, if any, as the court must still resolve on the parties' motions for summary judgment after the court answers the statute of limitations questions.

## I. INTRODUCTION

### A. Factual Background

The court will not attempt here an exhaustive dissertation on the undisputed and disputed facts in this case. Rather, the court will set forth sufficient of the facts, both undisputed and disputed, to put in context the parties' arguments concerning the parties' motions for summary judgment. Indeed, the facts necessary to explain the context of the parties' statute of limitations dispute, which is necessarily the first dispute that the court must address, are a relatively small subset of the facts that might otherwise be relevant to the plaintiff's claims and the defendants' defenses. Additional factual allegations and the extent to which they are or are not disputed or material will be discussed, if necessary, in the court's legal analysis.

Plaintiff Farmers Cooperative Company (FCC) is an Iowa cooperative with its principal place of business in New Hartford, Iowa. More specifically, FCC is the local farm cooperative located in Dike, New Hartford, and Parkersburg, Iowa, and a member cooperative of Land O' Lakes, Inc., engaged in the business of supplying feed to local livestock producers. Defendant LOL Finance Company (LOLFC) is a Minnesota corporation with its principal place of business in Arden Hills, Minnesota. LOLFC is a subsidiary of Land O' Lakes, Inc., in the business of financing agricultural businesses, including livestock producers. Defendant Swift Pork Company (Swift) is a Delaware corporation with its principal place of business in Greeley, Colorado. Swift owns and operates a hog processing facility in Marshalltown, Iowa.

In late 2002 or early 2003, FCC informed LOLFC that a feed customer, non-party William Root, was seeking financing to purchase and raise a large number of pigs. LOLFC eventually provided Root with an operating line of credit for his pig feeding operation. To secure payment on the line of credit, LOLFC entered into a security

agreement with Root pursuant to which Root granted LOLFC a security interest in certain personal property, including pigs and the proceeds from the sale of pigs. The parties do not dispute that LOLFC perfected its security interest in Root's pigs.

After a large number of Root's first group of pigs died in the summer of 2003, Root obtained a second group of pigs beginning in August 2003, also with financing from LOLFC. It is this second group of pigs, approximately 9,000 to 9,400 head, that is at issue in this case. Root had been purchasing feed for his pigs during 2003 from FCC, but stopped paying FCC for feed in September 2003. FCC contends that, in late October 2003, Paul Nielsen, a loan officer for LOLFC, met with representatives of FCC at the cooperative's board room in New Hartford. LOLFC contends that Root was also present at the meeting. FCC contends that, during this meeting, Nielsen informed FCC's representatives that LOLFC would be advancing additional funds to Root for bedding for the next group of feeder pigs. FCC asserts that, when a representative of FCC asked Nielsen why he would advance funds for bedding when FCC had not been paid for the feed that Root had purchased, Nielsen represented that FCC should not worry, because FCC would be paid. LOLFC acknowledges that such a meeting took place, but contends that it occurred in November 2003, not October 2003. Contrary to FCC's contentions, however, LOLFC denies that Nielsen made any assurances of any kind to FCC that Root's feed bill would be paid. Root did not pay for $134,358.51 worth of feed delivered by FCC to Root from September through November 21, 2003.

On November 17, 2003, FCC's board of directors addressed Root's outstanding feed bills. The board apparently believed that LOLFC had a prior perfected security interest in Root's pigs, so the minutes of the meeting reflect the following action:

> Motion to file for a *second position* on pigs owned by William Root to cover feed bill owed. Seconded. Motion carried.

LOLFC's Appendix at 64 (emphasis added). FCC now disputes that the board's belief that LOLFC had a superior position to FCC's agricultural supply dealer's lien is incorrect as a matter of law. FCC took steps to perfect its lien against Root's pigs by filing a UCC Financing Statement on November 25, 2003, covering the feed sold to Root during October and November 2003, and by filing a UCC Financing Statement on November 26, 2003, covering the feed sold to Root during September 2003. FCC contends, and neither Swift nor LOLFC disputes, that FCC gave actual notice of its agricultural supply dealer's lien to Swift and LOLFC by letters from FCC's attorney dated December 2, 2003. LOLFC contends that it did not receive the letter in question until December 15, 2003, however. In addition to seeking a secured position as to Root's unpaid feed bills, FCC also stopped supplying feed to Root on November 21, 2003. Thereafter, Root apparently obtained feed from another cooperative, Readlyn Cooperative, with financing from LOLFC.

Root's second group of pigs began maturing in December 2003. Beginning in December 2003, Root sold the finished pigs from the second group to Swift and Unique Swine Systems, and may have sold a small group of those pigs to IBP. FCC now asserts, and Swift and LOLFC agree, that 5,614 of the pigs in the second group were sold to Swift. Swift made out checks for its purchases of pigs from Root between December 13, 2003, and March 25, 2004, made payable to William Root, David Root (William's brother), and LOLFC, but did not include FCC as a payee.[1] Root endorsed the checks over to LOLFC

---

[1]LOLFC contends that pigs fed with feed supplied by FCC were all sold by February 5, 2004, so that the pigs sold on March 25, 2004, were not subject to FCC's alleged agricultural supply dealer's lien. This contention is not material to the court's disposition of the present motions.

to pay down his line of credit, and LOLFC did, in fact, apply the proceeds to Root's line of credit.

In late 2003 or early 2004, FCC learned that Swift had not included its name as a payee on the checks issued to Root. During February and March 2004, FCC's attorney sent three separate letters to Swift claiming that Swift had violated FCC's agricultural supply dealer's lien by not including FCC's name on the checks. On March 25, 2004, FCC's board of directors again met to discuss Root's unpaid feed bills. FCC's board passed a motion at that meeting to "proceed with action against Swift" if Root did not take action to pay his feed bill. Root's feed bill remained unpaid.

In litigation between FCC and Root in state court in 2003 and 2004, FCC obtained a judgment dated July 12, 2004, against Root in the amount of $145,457.77 for the unpaid feed bill. FCC received only two payments on that judgment, totaling $2,674.77. Root's pig finishing business eventually failed, and he sought bankruptcy protection. FCC contends that it recovered only $167.04 from Root's bankruptcy estate against its judgment for unpaid feed bills.

Even though FCC had considered legal action against Swift in 2004, FCC waited until August of 2007 before commencing any action against either Swift or LOLFC to recover the remainder of Root's unpaid feed bill from them on the ground that they improperly disregarded FCC's agricultural supply dealer's lien in Root's pigs.

### B. Procedural Background

FCC filed the Complaint (docket no. 2) initiating this lawsuit on August 13, 2007, naming Swift and LOLFC as defendants. FCC contends that Swift's failure to honor FCC's agricultural supply dealer's lien by failing to place FCC's name on the checks for Root's pigs purchased by Swift after Swift received notice of FCC's lien proximately

caused damage to FCC and that Swift is, consequently, liable to FCC for the damages suffered by FCC. FCC prays for judgment against Swift for all sums paid to Root for pigs purchased by Swift after notification of FCC's agricultural supply dealer's lien on or about December 3, 2003, up to the entire amount due and owing to FCC by Root at the time FCC's name was not placed on the checks from Swift for pigs sold to Swift by Root, with interest, attorney's fees, and costs. FCC also contends that LOLFC is liable to FCC for conversion of the proceeds of the pigs grown by Root in which FCC had a valid, perfected security interest that is superior to the claim of LOLFC after LOLFC receives a credit for any sums loaned by it to Root for acquisition of the pigs pursuant to IOWA CODE § 570A.5(3). FCC prays for judgment against LOLFC for the value of feed supplied to Root after notification of FCC's agricultural supply dealer's lien on or about December 3, 2003.

On September 6, 2007, LOLFC filed a Separate Answer (docket no. 5) to FCC's claim against it in which LOLFC denied FCC's claim and asserted various affirmative defenses, including an affirmative defense that FCC's claim is barred by the applicable statute of limitations, which LOLFC identified as the two-year statute of limitations set forth in IOWA CODE § 614.1(10). Also on September 6, 2007, Swift filed an Answer and Cross-Claim (docket no. 6), in which Swift denied FCC's claim, asserted various affirmative defenses, although those defenses did not include a defense of untimeliness of FCC's claim, and asserted a cross-claim against LOLFC for unjust enrichment. On September 17, 2007, LOLFC filed an Answer (docket no. 11) to Swift's unjust enrichment cross-claim, denying that cross-claim and asserting various affirmative defenses to it. On August 21, 2008, Swift filed an Amended Answer to add as an affirmative defense to FCC's claim a contention that FCC's claim is barred by the two-year statute of limitations set forth in IOWA CODE § 614.1(10).

7

Trial in this matter is set to begin on June 22, 2009. However, on September 15, 2008, each of the parties moved for summary judgment on some or all of the claims at issue, and disposition of those motions could make a trial unnecessary. In its Motion For Summary Judgment (docket no. 32), LOLFC seeks summary judgment in its favor on FCC's claim on the ground that FCC's claim is barred by the applicable statute of limitations, which LOLFC contends is IOWA CODE § 614.1(10). In the alternative, LOLFC contends that if FCC's claim is timely, the maximum amount of that claim is only $48,127.64, which is the value of the feed supplied by FCC to Root within the thirty-one days prior to the filing of its financing statement on November 25, 2003. In its Motion For Summary Judgment (docket no. 34), Swift seeks summary judgment in its favor on FCC's claim against it and, in the alternative, summary judgment on its cross-claim against LOLFC. Swift contends that FCC purchased Root's pigs free of any agricultural supply dealer's lien held by FCC pursuant to provisions of the federal Food Security Act, 7 U.S.C. § 1631(d), and that FCC's claim is barred by the applicable statute of limitations, which Swift also contends is IOWA CODE § 614.1(10). Swift also contends, in the alternative, that even if FCC's claim is not time-barred or preempted, the principal amount of FCC's claim is limited to $49,057.65 for grain sold by FCC to Root within thirty-one days of the filing of FCC's financing statement and, further, that FCC's claim must be reduced by another 30%, because only 70% of the pigs subject to FCC's agricultural supply dealer's lien, if any, were sold to Swift, so that the maximum judgment due would be $34,352.96. Finally, Swift contends that, if any judgment is entered in FCC's favor against Swift, Swift should have judgment in the same amount against LOLFC on Swift's unjust enrichment counterclaim. In its Motion For Summary Judgment (docket no. 35), FCC seeks summary judgment on its claim against Swift on the ground that there is no genuine issue of material fact that Swift failed to honor FCC's agricultural supply dealer's

lien by failing to identify FCC as a payee on checks issued as payment for pigs that Swift purchased from Root or failed to take other actions to honor FCC's lien or right to payment. The parties' motions for summary judgment were all duly resisted and replies were duly filed.

Because FCC acknowledges that the issues presented in its Motion for Summary Judgment include issues of first impression dealing with the interplay between the Iowa Commercial Code, Iowa Code Chapter 554, the Iowa Agricultural Supplier Lien Act, Iowa Code Chapter 570A, and provisions of the federal Food Security Act, 7 U.S.C. § 1631, FCC requested oral arguments on the novel issues presented. The court found that the same could be said of the defendants' motions for summary judgment, as well. The court agreed that oral arguments were likely to be of benefit to the court, so the court set oral arguments on the parties' motions for summary judgment for March 11, 2009.

At the oral arguments on March 11, 2009, plaintiff FCC was represented by Ronald C. Martin, who argued the motions, and Joe Peiffer of Day, Rettig, Peiffer, P.C., in Cedar Rapids, Iowa. Defendant Swift was represented by Robert E. Youle of Sherman & Howard, L.L.C., in Denver, Colorado, who argued the motions, and Gregory M. Lederer of Lederer, Weston, Craig, P.L.C., in Cedar Rapids, Iowa. Defendant LOLFC was represented by Jonathan C. Miesen of Stoel & Rives, L.L.P., in Minneapolis, Minnesota.

The parties' motions for summary judgment are now fully submitted.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 127 S.

Ct. 1955, 1982 (2007); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Any party may move for summary judgment regarding "all or any part" of the claims asserted in a case. FED R. CIV. P. 56(a) (allowing a claimant to move for summary judgment "at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party") & (b) (allowing a defending party to move for summary judgment "at any time"). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." *Id.* 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.* An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d

820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence"). Evidence presented by the nonmoving party that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, such as a "scintilla of evidence," *Anderson*, 477 U.S. at 252; *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997), or evidence that is "merely colorable" or "not significantly probative," *Anderson* at 249-50, does not make an issue of material fact genuine.

Thus, a *genuine issue of material fact* is not the "mere existence of some alleged factual dispute between the parties." *State Auto. Ins. Co. v. Lawrence*, 358 F.3d 982, 985 (8th Cir. 2004). "'Instead, "the dispute must be outcome determinative under prevailing law."'" *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) (quoting *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992), in turn quoting *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989)). In other words, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. Essentially, a genuine issue of material fact determination, and thus the availability of summary judgment, is a determination of "whether a proper jury question [is] presented." *Id.* at 249. A proper jury question is present if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

Procedurally, the moving party does not have to "support its motion with affidavits or other similar materials *negating* the opponent's claim," *Celotex*, 477 U.S. at 323, but the moving party does bear "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Thus, a

movant need only demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). Thus, the movant must show the absence of a genuine issue of material fact as it relates to the substantive law, and the nonmovant must show the alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 322; *In re Temporomandibular Joint*, 113 F.3d at 1492.

In considering whether a genuine issue of material fact is present, the court must view all the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Mosley*, 415 F.3d at 910. Further, the court must give such party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita*, 475 U.S. at 587-88. However, "because we view the facts in the light most favorable to the non-moving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather than "attempt[ing] to determine the truth of the matter . . . the court's function is

to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

Of course, the facts are not the sole concern of the court; after all, a genuine issue of material fact necessarily depends on the substantive law. *See Holloway*, 884 F.2d at 366 ("The presence of a genuine issue of fact is predicated on the existence of a legal theory which can be considered viable under the nonmoving party's version of the facts. The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."). Thus, the relevant law concerning plaintiff's claims is pivotal. *Anderson*, 477 U.S. at 252 ("[T]he inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."); *see Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998) ("'In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law.'" (quoting *Hartnagel*, 953 F.2d at 396)). Even if no genuine issue of material fact is present, summary judgment is not appropriate unless the governing law supports the moving party's position. FED. R. CIV. P. 56(c) (requiring the moving party to show that it "is entitled to judgment as a matter of law"). Moreover, summary judgement is particularly appropriate "where the unresolved issues are primarily legal rather than factual." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996).

With these standards in mind, the court turns to its disposition of the parties' motions for summary judgment.

### B. Timeliness Of FCC's Claims

The court finds that the threshold issue in all of the motions for summary judgment is the timeliness or untimeliness of FCC's claims against Swift and LOLFC, whether or not that issue was the first one raised by each moving party. Only if FCC's claims are not time-barred under the statute of limitations that the court determines to be applicable to those claims will the court reach other arguments about the merits of the parties' claims or cross-claims. On the other hand, if FCC's claims would otherwise be time-barred, the only other matter that the court will have to consider is FCC's contention that LOLFC is equitably estopped to assert the untimeliness of FCC's claim against LOLFC. The court's analysis of the threshold issue of the timeliness of FCC's claims begins with the parties' arguments.

### 1. Arguments of the parties

#### a. LOLFC's argument

LOLFC argues that the applicable statute of limitations for FCC's claim against it is Iowa Code § 614.1(10), which establishes a two-year statute of limitations for claims "founded on a secured interest in farm products" which runs "from the date of the sale of the farm products against the secured interest of the creditor." More specifically, LOLFC argues that "secured interest" is a generic term that includes both security interests, *i.e.*, voluntary or contractual security agreements, and statutory liens. LOLFC argues that the Iowa Agricultural Supply Dealer Act itself recognizes that an agricultural supply dealer is a "secured party," citing Iowa Code § 570A.3, and that Article 9 of the Uniform Commercial Code (UCC) includes "a person that holds an agricultural lien" as a "secured party," citing Iowa Code § 554.9102(1)(bt)(2). Thus, LOLFC contends that § 614.1(10) is plainly applicable to FCC's claim based on its purported agricultural supply dealer's lien. LOLFC then argues that, despite FCC's admission that it knew that Root had sold

all of the pigs in his second group—that is, pigs fed with feed for which he did not pay FCC—by February 5, 2004, FCC did not file suit against LOLFC until well after the applicable statute of limitations expired on February 5, 2006. Indeed, LOLFC argues that FCC has admitted that it was well aware of its claim against LOLFC in March 2004 and has no explanation for waiting until August 2007 to commence this action.

LOLFC argues that FCC's argument that the applicable statute of limitations is IOWA CODE § 614.1(4), which provides a five-year statute of limitations, fails as a matter of law, because that argument ignores the plain language of both § 614.1(4), which specifically excepts from its five-year limitations period claims defined in § 614.1(10), and the language of § 614.1(10) defining the claims to which it applies. Moreover, LOLFC argues that it is clear that a specific statute of limitations, such as § 614.1(10), prevails over a general one, such as § 614.1(4). LOLFC also argues that the clear intention of the Iowa Legislature in repealing the specific one-year statute of limitations for claims based on an agricultural supply dealer's lien in IOWA CODE § 570A.7 in 2003 was to treat an action based on such a lien as an action on a "secured interest in farm products" within the meaning of § 614.1(10). LOLFC surmises such legislative intent from contemporaneous amendments specifically identifying an agricultural supply dealer as a "secured party" under Article 9 of the UCC, rewriting of the method for perfecting an agricultural supply dealer's lien to conform to the requirements for perfecting other Article 9 security interests, and rewriting the Act to subject an agricultural supply dealer's lien to Article 9 priority provisions.

Ultimately, LOLFC contends that FCC's argument that the five-year statute of limitations under § 614.1(4) is applicable makes no sense, because there is no reason why the legislature would extend the period for bringing a claim to enforce an agricultural supply dealer's lien from one year to five years, by repealing the one-year limitations

15

period in IOWA CODE § 570A.7, when the purpose of § 570A.7, like the purpose of § 614.1(10), was to encourage prompt resolution of claims founded on secured interests in farm products.

### b.    Swift's argument

Swift also argues that FCC's claim is time-barred, because § 614.1(10) is the applicable statute of limitations. Like LOLFC, Swift argues that FCC's claim against it is "founded on a secured interest in farm products" within the meaning of § 614.1(10), echoing LOLFC's arguments. Swift notes that as early as March 2004, FCC's board contemplated legal action against Swift, but FCC then waited until August 2007, more than three years later, to file this lawsuit.

### c.    FCC's argument

In support of its own motion for summary judgment and in response to the defendants' motions, FCC argues that its claims are timely, because the applicable statute of limitations is the five-year statute of limitations in IOWA CODE § 614.1(4). FCC argues that courts apply § 614.1(4) to actions for conversion, such as FCC is asserting here. FCC argues that, when § 614.1(10) was enacted, the statutory provision establishing agricultural supply dealers' liens, IOWA CODE § 570A.3, did not exist. When the provision establishing such liens was enacted in 1984, the legislature also established a specific one-year statute of limitations for claims based upon such liens in IOWA CODE § 570A.7, and that this specific statute of limitations remained in force for twenty years until it was repealed in 2003. Thus, FCC argues that, for twenty years, "secured interests in farm products" within the meaning of § 614.1(10) meant only consensual "security interests," not statutory liens, because there was a separate statute of limitations for statutory liens. FCC argues that the statutory definition of an agricultural supply dealer's lien in Chapter

570A and the definition "agricultural lien" in IOWA CODE § 554.9102 make clear that an agricultural supply dealer's lien is not a "security interest."

FCC also argues that, when § 570A.7 was repealed, no statute of limitations for a claim based on an agricultural supply dealer's lien was "otherwise provided for" by a specific statutory provision. FCC contends that the defendants have pointed to no authority to show that, in repealing § 570A.7, the Iowa legislature also intended to amend *sub silencio* the well-settled meaning of § 614.1(10) as applying only to consensual "security interests." Indeed, FCC points out that the legislature could easily have made a reference to § 614.1(10) when it amended Chapter 570A, but the legislature did not do so. FCC also argues that § 614.1(10) does not plainly apply to Chapter 570A liens, because such liens did not exist at the time that § 614.1(10) was enacted. FCC also points out that none of the other amendments to Chapter 570A or the UCC on which LOLFC relies mention statutes of limitations.

Next, FCC contends that a five-year statute of limitations makes sense in light of the period of time that the filing of a financing statement is effective and the purposes of the various statutes. FCC argues that it makes no sense to apply a five-year statute of limitations to a claim on an open account, *i.e.*, a claim against a party primarily liable on an account, but to apply a shorter statute of limitations to a claim to enforce an agricultural supply dealer's lien, which may be brought against a party that is only secondarily liable. Thus, FCC contends that the most reasonable conclusion is that Iowa's general five-year statute of limitations for conversion became applicable to enforcement of agricultural supply dealers' liens when the specific one-year statute of limitations for such claims was repealed. FCC argues that it is undisputed that it brought its claim within five years of Swift's and LOLFC's actions in converting the proceeds from the sale of Root's pigs.

### d. *The defendants' replies*

In reply to FCC's arguments, LOLFC reiterates that the plain language of § 614.1(10), which is cast in terms of a "secured interest," applies equally to "security interests" and statutory "liens." LOLFC points out that the only reason that § 614.1(10) did not apply to agricultural supply dealers' liens prior to 2003 was that there was a specific statute of limitations provision for actions based on such agricultural supply dealers' liens, § 570A.7. LOLFC argues that, when that specific statute of limitations was repealed, there was no logical or textual reason that § 614.1(10) would not then apply to actions based on agricultural supply dealers' liens. LOLFC also contends that by trying to relate actions on open accounts to actions on agricultural supply dealers' liens and by trying to relate the duration of a financing statement to the statute of limitations for actions on security interests, FCC is simply mixing apples and oranges. Finally, LOLFC contends that it makes more sense that a two-year statute of limitations would take the place of a one-year statute of limitations, because the legislature intended prompt resolution of the claims in question. Swift, likewise, argues that FCC's arguments are contrary to the plain language of § 614.1(10) and logic for essentially the same reasons asserted by LOLFC.

### 2. *Analysis*

### a. *A question of first impression*

The parties concede that the question of what statute of limitations applies to FCC's claim based on its agricultural supply dealer's lien under Chapter 570A of the Iowa Code is one of first impression, at least since the Iowa legislature repealed the specific statute of limitations applicable to such a lien in 2003. The court still believes that this question of first impression should ultimately be decided by the Iowa Supreme Court. *See* Order of November 6, 2008 (docket no. 53) (requesting the parties' input on whether the issues of first impression presented in this case should be certified to the Iowa Supreme

Court); *cf. Saeemodarae v. Mercy Health Servs.*, 456 F. Supp. 2d 1021, 1043 (N.D. Iowa 2006) (observing, in a decision considering whether to exercise supplemental jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367(c) when all federal claims had been dismissed, that "the court believes that interpretation of a state statute as a matter of first impression should be left to the state courts"); *Remmes v. International Flavors & Fragrances, Inc.*, 389 F. Supp. 2d 1080, 1094 (N.D. Iowa 2005) (noting that the court would look favorably upon a request by the parties to certify a question of first impression under state law to the state supreme court). However, because the parties declined the court's offer to certify the question of first impression under Iowa law presented here concerning the applicable statute of limitations, this court must predict how the Iowa Supreme Court would decide this case. *Brandenburg v. Allstate Ins. Co.*, 23 F.3d 1438, 1440 (8th Cir. 1994).

### b. *Iowa rules of statutory interpretation*

This court's prediction of how the Iowa Supreme Court would resolve the question of first impression presented in this case depends, in large part, on the proper interpretation of IOWA CODE § 614.1 and provisions of IOWA CODE CH. 570A. As the Iowa Supreme Court has recently explained,

> When confronted with the task of determining the meaning of a statute, we have stated:
> > The goal of statutory construction is to determine legislative intent. We determine legislative intent from the words chosen by the legislature, not what it should or might have said. Absent a statutory definition or an established meaning in the law, words in the statute are given their ordinary and common meaning by considering the context within which they are used. Under the guise of construction, an interpreting body

19

> may not extend, enlarge or otherwise change the
> meaning of a statute.
>
> *Auen v. Alcoholic Beverages Div.,* 679 N.W.2d 586, 590
> (Iowa 2004) (citations omitted). The interpretation of a statute
> requires an assessment of the statute in its entirety, not just
> isolated words or phrases. *State v. Young,* 686 N.W.2d 182,
> 184-85 (Iowa 2004). Indeed, "we avoid interpreting a statute
> in such a way that portions of it become redundant or
> irrelevant." *T & K Roofing Co. v. Iowa Dep't of Educ.,* 593
> N.W.2d 159, 162 (Iowa 1999) (citation omitted). We look for
> a reasonable interpretation that best achieves the statute's
> purpose and avoids absurd results. *Harden v. State,* 434
> N.W.2d 881, 884 (Iowa 1989).

*Schadendorf v. Snap-On Tools Corp.*, 757 N.W.2d 330, 337-38 (Iowa 2008). Thus, the
court's role is, first, to determine whether the meaning of the statute is plain, and if so, to
give effect to that plain meaning. *See State v. Public Employment Relations Bd.*, 744
N.W.2d 357, 360-61 (Iowa 2008) ("When we interpret a statute, our primary goal is to
ascertain the legislature's intent. *State Pub. Defender v. Iowa Dist. Ct.*, 663 N.W.2d 413,
415 (Iowa 2003). To determine the legislature's intent, we first examine the language of
the statute. *Id.* 'If the statutory language is plain and the meaning clear, we do not search
for legislative intent beyond the express terms of the statute.' *Horsman v. Wahl*, 551
N.W.2d 619, 620-21 (Iowa 1996)."); *Birchansky Real Estate, L.C. v. Iowa Dep't of Public
Health*, 737 N.W.2d 134, 139 (Iowa 2007) ("'If the statute's language is clear and
unambiguous, we apply a plain and rational meaning consistent with the subject matter of
the statute.'") (quoting *ABC Disposal Sys., Inc. v. Dep't of Natural Res.*, 681 N.W.2d
596, 603 (Iowa 2004)).

### c.    *Interpretation of the statutes in question*

The Iowa Agricultural Supply Dealer Lien Act, IOWA CODE CH. 570A, creates a statutory lien in favor of "[a]n agriculural supply dealer who provides an agricultural supply to a farmer," and identifies the agricultural supply dealer as a "secured party," and the farmer as a "debtor" for purposes of article 9 of IOWA CODE CH. 554, Iowa's version of the Uniform Commercial Code (UCC). IOWA CODE § 570A.3. The Act defines an "agricultural supply dealer," *inter alia*, as "a person engaged in the retail sale of agricultural . . . feed," IOWA CODE § 570A.1(4); defines an "agricultural supply" as including "feed," IOWA CODE § 570A.1(3); and expressly provides that the lien created in § 570A.3 applies to "livestock consuming the feed," IOWA CODE § 570A.3(2). The parties do not dispute that FCC was an "agricultural dealer," that Root was a "farmer" and "debtor," or that FCC obtained and attempted to perfect an "agricultural supply dealer's lien" in "livestock consuming the feed" that FCC sold to Root, that is, Root's pigs. The parties also do not dispute that, prior to its repeal in 2003, IOWA CODE § 570A.7 provided that "[a]n action to enforce a lien under this chapter may be brought within one year after the date the lien statement is filed and not afterward."

The question that the parties do dispute is what statute of limitations became applicable to actions to enforce a lien under Chapter 570A after § 570A.7 was repealed. The nominee statutes of limitations, which must be interpreted here, are the following:

> Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared:
> * * *
> **4.    Unwritten contracts—injuries to property— fraud—other actions.** Those founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court

of chancery, and all other actions not otherwise provided for in this respect, within five years, except as provided by subsections 8 and 10.

    \* \* \*

    **10.    Secured interest in farm products.**  Those founded on a secured interest in farm products, within two years from the date of sale of the farm products against the secured interest of the creditor.

IOWA CODE § 614.1(4) & (10).  FCC contends that § 614.1(4) applies to its claims that the defendants disregarded its agricultural supply dealer's lien pursuant to IOWA CODE § 570A.3, while the defendants contend that § 614.1(10) applies to FCC's claims.

    Beginning with the plain language of these provisions, *see Scahdendorf*, 757 N.W.2d at 337-38; *Public Employment Relations Bd.*, 744 N.W.2d at 360-61, it is readily apparent that paragraph (10) is an exception to subsection (4)—that is, that subsection (4) applies unless subsection (10) applies—because subsection (4) expressly states a five-year statute of limitations for the pertinent actions, "except as provided by subsections 8 and 10)."  IOWA CODE § 614.1(4).  The parties do not dispute that § 614.1(10) is a more specific statute of limitations that is an exception to the more general statute of limitations in § 614.1(4).  They do dispute, however, whether the general provision or the exception applies to FCC's claims.

    Again, the plain meaning of § 614.1(10) is instructive as to what actions fall within its scope.  The provision expressly applies to actions "founded on secured interest[s] in farm products."  The defendants assert, and FCC essentially concedes, at least in the absence of any other language or circumstances limiting the scope of "secured interest," that the term "secured interest" would include both consensual or contractual "security interests" and statutory "liens."  The court agrees that "secured interest" is language that plainly is intended to have a broader scope than "security interest" or "consensual security

22

interest," and that it encompasses both consensual or contractual "security interests" and statutory "liens." For example, the legislature has elsewhere expressly distinguished between agricultural liens and "security interests." *See, e.g.,* I͟OWA C͟ODE § 554.9102(1)(e) ("'Agricultural lien' means an interest, *other than a security interest*, in farm products. . . ." (emphasis added)). The legislature has also defined "secured party," *inter alia*, to mean "a person that holds an agricultural lien." I͟OWA C͟ODE § 554.9102(1)(bt)(2). Thus, a "secured interest" is something broader or more inclusive than a "security interest." The legislature has not, however, expressly defined "secured interest" anywhere in the Iowa Code to exclude either "liens" or "security interests," and certainly has not expressly done so in § 614.1(10).

Moreover, where the statutory language is not just "security interest" or "consensual security interest," which are terms that do have more restrictive meanings than "secured interest," and the legislature could have selected such more restrictive language, had it intended a more restrictive meaning, but did not do so, this court may not change the meaning of the statute under the guise of "construction." *See Schadendorfer*, 757 N.W.2d at 337 ("'We determine legislative intent from the words chosen by the legislature, not what it should or might have said. Under the guise of construction, an interpreting body may not extend, enlarge or otherwise change the meaning of a statute,'" (quoting *Auen*, 679 N.W.2d at 590)). Indeed, this is a circumstance in which the statutory language is plain and the meaning clear, so that the court should not search for legislative intent beyond the express terms of the statute. *Public Employment Relations Bd.*, 744 N.W.2d at 360-61. For this reason alone, the court is unpersuaded by FCC's argument that, in light of the subsequent enactment in 1984 of a specific statute of limitations provision for claims under the Iowa Agricultural Supply Dealer Lien Act and the subsequent repeal of that statute of limitations provision in 2003, *see* I͟OWA C͟ODE

§ 570A.7, "secured interest" in § 614.1(10) had a more restrictive meaning than its plain language would indicate, limited to actions on consensual security interests, but not including actions on statutory liens. That argument plainly ranges well beyond the plain language of § 614.1(10). *Id.* Therefore, it appears from the plain language of § 614.1(10) that this statute is applicable to FCC's claims against LOLFC and Swift, because those claims are actions founded on "a secured interest in farm products," where FCC's action is "founded on" the defendants' disregard of FCC's statutory agricultural supply dealer's lien (a "secured interest") in Root's pigs ("farm products").

FCC's argument—that the meaning of § 614.1(10) was restricted for twenty years by the presence of a specific statute of limitations for actions founded on agricultural supply dealers' liens in § 570A.7, so that § 614.1(10) was intended to retain only that limited scope after the specific statute of limitations in § 570A.7 was repealed—is also "backwards." In the court's view, the question is the original scope of the language of § 614.1(10) when it was enacted, when attempting to determine whether § 614.1(10) or some other provision was the statute of limitations to which the legislature intended to revert when it repealed the specific statute of limitations for actions on agricultural supply dealers' liens in IOWA CODE § 570A.7, not the scope of § 614.1(10) as it had been limited by the repealed section. Indeed, because the plain language of § 614.1(10), enacted in 1983, encompassed actions based on both consensual or contractual security interests and actions based on statutory liens, it was plainly the statute of limitations that would have applied to actions founded on agricultural supply dealers' liens pursuant to § 570A.3, when the Agricultural Supply Dealer Lien Act was passed in 1984, had the legislature not included a specific statute of limitations provision for such actions in § 570A.7. It follows that § 614.1(10) is also the statute of limitations provision to which the legislature intended to revert when it repealed the specific statute of limitations provision in § 570A.7. It

would also be illogical to assume that the legislature intended to revert to the more general statute of limitations in IOWA CODE § 614.1(4), but to give no effect to the express exceptions set out in that provision, which are for actions falling within § 614.1(8) and § 614.1(10). *Schadendorf*, 757 N.W.2d at 337 (the court must avoid interpreting a statute in such a way that portions of it become redundant or irrelevant).[2]

The conclusion that § 614.1(10) is the statute of limitations to which the legislature intended to revert when it repealed the specific statute of limitations for actions founded on agricultural supply dealers' liens under Chapter 570A is also a reasonable interpretation that best achieves the statute's purpose, while avoiding the absurd results of ignoring part of the language of § 614.1(4). *Schadendorf*, 757 N.W.2d at 338 ("We look for a reasonable interpretation that best achieves the statute's purpose and avoids absurd results."). The evident purpose behind § 614.1(10), which shortens the limitations period from five years under § 614.1(4) to two years for claims founded on secured interests in farm products, is to hasten resolution of such claims. *Public Employment Relations Bd.*, 744 N.W.2d at 360-61 ("To determine the legislature's intent, we first examine the language of the statute." (Internal quotation marks and citation omitted)). A similar purpose was evinced by the inclusion of a one-year statute of limitations period for claims based on agricultural supply dealers' liens in Chapter 570A, when that Chapter was enacted in 1984. That purpose of speedy resolution of claims founded on an agricultural supply dealer's lien is best achieved by defaulting or reverting to a two-year statute of

---

[2]FCC has also failed to show that, during the twenty years that § 570A.7 was in force, there were no other non-consensual secured interests to which § 614.1(10) would have applied, but even if FCC had made such a showing, that does not mean that the scope of § 614.1(10) was thereby limited to consensual security interests, because reading § 614.1(10) to apply only to consensual security interests would be contrary to the plain meaning of that provision.

limitations, when the specific one-year statute of limitations provision in Chapter 570A was repealed, not by reverting to a much longer five-year statute of limitations provision.

Therefore, the court concludes that, as a matter of law, the statute of limitations applicable to FCC's claims founded on its agricultural supply dealer's lien, is the two-year statute of limitations in § 614.1(10), not the five-year statute of limitations in § 614.1(4), and the defendants are entitled to summary judgment to that effect. Moreover, assuming that FCC had a valid agricultural supply dealer's lien, the record shows, beyond dispute, that not only were the farm products subject to FCC's agricultural supply dealer's lien, Root's second group of pigs, sold in 2003 and 2004, more than two years before FCC brought its claims against LOLFC and Swift for disregarding its lien in August of 2007, but that FCC brought its claims more than two years after it knew that Swift had not made FCC a payee on the checks for purchase of the farm products in question and that LOLFC had applied the proceeds of the purchase to Root's line of credit, despite FCC's attempts to perfect and notify FCC and LOLFC of its lien. Under these circumstances, Swift is entitled to summary judgment on FCC's claims against it, on the ground that FCC's claims are untimely.

However, the court must still consider FCC's contention that the untimeliness of its claim against LOLFC is not fatal to that claim.

### C. Equitable Estoppel Against LOLFC

In its response to LOLFC's motion for summary judgment on statute of limitations grounds, FCC argues that, even if the court determines in its disposition of LOLFC's motion for summary judgment that § 614.1(10) is the statute of limitations applicable to FCC's claims and that FCC's claims are, thus, time-barred, the court should also determine that LOLFC should be equitably estopped from raising the statute of limitations

defense or that the limitations period has been equitably tolled for such a period as to permit the commencement of FCC's action to be considered timely. The court begins its analysis of this alternative contention with FCC's and LOLFC's arguments concerning the merits of FCC's equitable estoppel claim.

### 1. Arguments of the parties

#### a. FCC's argument

FCC argues that it is a member cooperative of Land O' Lakes, Inc., LOLFC's parent corporation, so that its relationship with LOLFC was not arm's length. FCC contends that it is undisputed that LOLFC intended that FCC would provide pig feed for Root's pig feeding operation. FCC contends that it is also clear that LOLFC's representative, Paul Nielsen, assured FCC representatives in a meeting in October 2003 that FCC had nothing to worry about, because FCC would be paid for all the feed provided to Root. FCC contends that Nielsen's representation subsequently proved to be false, because Root did not pay FCC for pig feed for September, October, and November 2003, and eventually began purchasing pig feed from Readlyn Cooperative, still with financing from LOLFC. FCC contends that LOLFC received and retained proceeds of Root's sale of his pigs, even though LOLFC knew that FCC had not been paid for pig feed purchased by Root and even though LOLFC had received notice of FCC's agricultural supply dealer's lien. FCC asserts that it had no reason to anticipate that LOLFC would misrepresent its intention that FCC would receive payment. FCC also argues that the facts show that LOLFC intended that FCC would rely on its representation that FCC would be paid, where Nielsen admitted in deposition that it was LOLFC's intention that Root's pigs would be fed to market weight, because without feed, the pigs would die, and LOLFC's security interest in the pigs would be worthless. Thus, FCC contends that a reasonable inference from the record is that LOLFC intended to mislead FCC into continuing to supply feed to Root until

the alternate source of feed at Readlyn could be obtained, and to induce FCC to refrain from commencing legal action to enforce its agricultural supply dealer lien.

FCC contends that, obviously, it relied to its detriment on LOLFC's representations, because it continued to provide feed to Root for which he did not pay, and because FCC has been unable to recover the full amount due from Root. Moreover, FCC asserts that LOLFC has refused to release funds to satisfy FCC's judgment against Root. FCC also asserts that it relied on LOLFC's misrepresentations by refraining from commencing an action against LOLFC until after it had first sought payment from Root through litigation against Root and in Root's bankruptcy proceedings.

### b.    LOLFC's reply

In LOLFC's reply in further support of its motion for summary judgment, LOLFC attacks FCC's "recently concocted" equitable estoppel argument, on the ground that the sole basis for FCC's argument, an affidavit submitted by one of its board members concerning representations purportedly made by Paul Nielsen, is insufficient as a matter of law. LOLFC argues that FCC failed to submit any evidence, let alone clear and convincing evidence, showing that the alleged statement by Neilsen was made with the intent to mislead FCC "into the trap of the time bar" under § 614.1(10). LOLFC also argues that it defies credulity to suggest that Nielsen intended to induce FCC to wait more than two years after the sale of the second group of pigs to commence this suit, when Nielsen's alleged statement was made a month before LOLFC and Nielsen even knew about FCC's alleged lien and at least two months before the sale of the pigs and the application of the proceeds to Root's line of credit with LOLFC, which is the event that purportedly created the claim. LOLFC argues that, in the absence of clear and convincing evidence of Nielsen's intent, FCC's estoppel argument must fail.

LOLFC argues, further, that FCC also failed to submit any evidence, let alone clear and convincing evidence, that it delayed commencing this case until after February or March 2006 in reliance upon Nielsen's alleged statement. LOLFC points out that there is no dispute that FCC knew by late 2003 or early 2004 that the proceeds from the second group of pigs had been transferred to LOLFC, yet FCC never asked for any money from LOLFC based upon Nielsen's alleged statement, or for any other reason, until FCC filed this lawsuit. LOLFC points to evidence that, in the interim, FCC actually signed over to LOLFC $198,717.65 worth of checks from the sale of Root's third group of pigs in January 2005, which it clearly would not have done if it believed LOLFC owed it any money. Thus, LOLFC argues that the record shows that the real reason that FCC did not ask LOLFC for any money or take legal action against LOLFC was because it believed that LOLFC's security interest was prior and superior to FCC's lien. Indeed, LOLFC points out that, even as late as December 2006, FCC believed that it had no claim against LOLFC and that its only potential claim was against Swift.

### 2. Analysis

#### a. Elements of equitable estoppel

The doctrine of equitable estoppel "is intended to prevent a party from benefiting from 'the protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress within the period of limitations.'" *Christy v. Miulli*, 692 N.W.2d 694, 702 (Iowa 2005) (quoting *Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex. 1983)). Thus, "equitable estoppel has nothing to do with the running of the limitations period or the discovery rule; it simply precludes a defendant from asserting the statute as a defense when it would be inequitable to permit the defendant to do so." *Id.* at 701.

As the Iowa Supreme Court has explained,

To establish equitable estoppel, the plaintiff must prove by clear and convincing evidence:

> (1) The defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act upon such representations; and (4) the plaintiff did in fact rely upon such representations to his prejudice.

*Christy v. Miulli,* 692 N.W.2d 694, 702 (Iowa 2005) (quoting *Meier v. Alfa-Laval, Inc.,* 454 N.W.2d 576, 578-79 (Iowa 1990)); accord *Dierking v. Bellas Hess Superstore, Inc.,* 258 N.W.2d 312, 315 (Iowa 1977).

*Hook v. Lippolt*, 755 N.W.2d 514, 524-25 (Iowa 2008). As the Iowa Supreme Court has also explained,

> With respect to the first element, a party relying on the doctrine of fraudulent concealment must prove the defendant did some affirmative act to conceal the plaintiff's cause of action independent of and subsequent to the liability-producing conduct. *See* 51 Am.Jur.2d *Limitation of Actions* § 387, at 694-95. Furthermore, the plaintiff's reliance must be reasonable. *See Holman v. Omaha & C.B. Ry. & Bridge Co.,* 117 Iowa 268, 274, 90 N.W. 833, 834 (1902) (stating "estoppel would only be effective so long as the [plaintiff] reasonably relied upon defendant's representations as an excuse for not instituting the action"); 51 Am.Jur.2d *Limitation of Actions* § 384, at 691-92 ("The representation or conduct must have been relied upon reasonably, justifiably, and in good faith."). The circumstances justifying an estoppel end when "[the] plaintiff [becomes] aware of the fraud, or by the use of ordinary care and diligence should have discovered it." *Faust v. Hosford,* 119 Iowa 97, 100, 93 N.W. 58, 59 (1903). At that point the plaintiff must file suit "within a period of time not exceeding the original statutory period applicable to the particular cause of action." 51 Am.Jur.2d *Limitation of Actions* § 386, at 694. The plaintiff bears the

burden to prove equitable estoppel by a clear and convincing preponderance of the evidence. *Meier,* 454 N.W.2d at 578.

*Christy*, 692 N.W.2d at 702.

### b.    *Analysis of the record*

Although LOLFC quite naturally wishes to defeat FCC's equitable estoppel argument on the grounds that it did not act with fraudulent intent, *see Hook*, 755 N.W.2d at 524-25 (the first element of an equitable estoppel claim is that the defendant has made a false representation or has concealed material facts, and the third element is that the defendant made the false representation with intent that the plaintiff act upon that representation); *Christy*, 692 N.W.2d at 702 (the purpose of the equitable estoppel doctrine is to prevent a party from benefitting from a fraud that has prevented the other party from timely asserting its claim), the court finds that the clearest hole in FCC's equitable estoppel argument is that, by March 2004, FCC no longer lacked knowledge of the true facts, as required to establish the second element of its equitable estoppel claim. *Id.* (the second element of an equitable estoppel claim is that the plaintiff lacks knowledge of the true facts). As a matter of law, any estoppel in this case ended more than two years before FCC finally filed its claim against LOLFC. Again, "[t]he circumstances justifying an estoppel end when '[the] plaintiff [becomes] aware of the fraud, or by the use of ordinary care and diligence should have discovered it.'" *Christy*, 692 N.W.2d at 702 (quoting *Faust*, 119 Iowa at 100, 93 N.W. at 59). Here, there can be no dispute that the circumstances justifying an estoppel, if any, ended when FCC became aware that its name had not been included as a payee on the checks for the purchase of Root's second group of pigs, and the proceeds of those checks had been applied by LOLFC to Root's line of credit with LOLFC, *i.e.*, no later than March 2004. At that point, FCC was aware of the

purported fraud, or by the use of ordinary care and diligence, should have discovered it, *id.*, and could no longer claim ignorance of the true facts. *Hook*, 755 N.W.2d at 525.

Similarly, the record simply does not generate a genuine issue of material fact, let alone present evidence that is anywhere near clear and convincing, that FCC was continuing to rely to its prejudice upon Nielsen's purported assurances that FCC would be paid after March 2004 or, indeed, that FCC relied to its prejudice on that purported assurance after November 2003. *Id.* at 525 (final element of an equitable estoppel claim is that the plaintiff relied to its prejudice on the defendant's fraudulent representations). Once FCC learned that its name had not been included as a payee on the checks for the purchase of Root's second group of pigs, and the proceeds of those checks had been applied by LOLFC to Root's line of credit with LOLFC, FCC could no longer have reasonably relied on Nielsen's purported assurances that FCC would be paid for Root's feed. *Christy*, 692 N.W.2d at 702 (the plaintiff's reliance on the purportedly fraudulent statement must be reasonable). Indeed, the record shows beyond dispute that the reason for FCC's delay in pursuing a claim against LOLFC was that FCC believed *from November 2003 onward* that it could claim, at best, a second position to LOLFC's perfected security interest in Root's pigs. *See* LOLFC's Appendix at 64 (minutes of the November 17, 2003, meeting of FCC's board of directors showing that the board decided to "file for a *second position* on pigs owned by William Root to cover feed bill owed") (emphasis added). Absolutely nothing in the record supports the notion—and certainly nothing in the record amounts to clear and convincing evidence—that FCC waited to file suit against LOLFC for more than three years after the pigs in which it had a secured interest had been sold in reliance on a purported assurance by a representative of LOLFC that FCC would be paid for Root's feed, where that assurance was made before FCC even perfected or notified LOLFC of its lien on Root's pigs, FCC believed it held only a second

position to LOLFC's security interest in those pigs, and FCC made no demands upon LOLFC to make good on its promise of payment during those three years.

Therefore, LOLFC's motion for summary judgment on the ground that FCC's claim is untimely is not defeated by FCC's claim that LOLFC should be equitably estopped to assert its statute of limitations defense. Upon this record, LOLFC's motion for summary judgment must also be granted.

## III. CONCLUSION

The court finds that, as a matter of law, the statute of limitations applicable to a claim founded on an agricultural supply dealer's lien pursuant to IOWA CODE § 570A.3—at least since the repeal in 2003 of the specific one-year statute of limitations for such claims in § 570A.7—is IOWA CODE § 614.1(10), which provides a two-year statute of limitations "from the date of sale of the farm products against the secured interest of the creditor" for claims "founded on a secured interest in farm products." Under the applicable statute of limitations, FCC's claims against Swift and LOLFC are untimely. Moreover, FCC has failed to generate genuine issues of material fact that LOLFC should be equitably estopped to assert the untimeliness of FCC's claim. Thus, both Swift and LOLFC are entitled to summary judgment on FCC's claims against them, FCC is not entitled to summary judgment on its claim against Swift, and Swift's alternative motion for summary judgment against LOLFC is moot.

THEREFORE,

1. LOLFC's September 15, 2008, Motion For Summary Judgment (docket no. 32) is **granted** on the ground that FCC's claim against LOLFC is time-barred under the applicable statute of limitations, IOWA CODE § 614.1(10);

2.     Swift's September 15, 2008, Motion For Summary Judgment (docket no. 34) is **granted** against FCC, on the ground that FCC's claim against Swift is time-barred under the applicable statute of limitations, IOWA CODE § 614.1(10), but **denied as moot** against LOLFC;

3.     FCC's September 15, 2008, Motion For Summary Judgment (docket no. 35) is **denied**; and

4.     Judgment in favor of the defendants shall enter accordingly.

**IT IS SO ORDERED.**

**DATED** this 16th day of March, 2009.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA